IN THE CIRCUIT COURT FOR THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
CIVIL DIVISION

ANTHONY SAYEGH,
an individual,

        Plaintiff,

v.

NUMARA SOFTWARE, INC.,
a foreign limited partnership,

        Defendant.

Case No.:

10 022917

DIVISION B

/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ANTHONY H. SAYEGH ("Plaintiff"), hereby sues Defendant, NUMARA

SOFTWARE, INC., ("Defendant"), and alleges as follows:

### JURISDICTION AND VENUE

1.    This is an action for damages the value of which exceeds $15,000,

exclusive of pre-judgment interest, costs, and attorney's fees.

2.    Plaintiff's claims asserted herein accrued in Hillsborough County, Florida.

3.    Defendant developed and/or sold computer software related products

and/or services from its facility located in Hillsborough County, Florida at all times

material to this action.

4.    Defendant was Plaintiff's employer within the meaning of the Florida Civil

Rights Act of 1992, § 760.10 *et seq.* ("FCRA") and the Florida Whistleblower Act at all

times relevant to this matter. Likewise, Defendant was and is an employer within the

meaning of the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601

[1]

("FMLA"), at all times relevant to this action, employing more than 50 individuals within a 75-mile radius. Plaintiff was covered by the provisions of FMLA at all times relevant to this action and had worked more than 1250 hours within the 12 months preceding the request for medical leave and the retaliatory response(s) of Defendant.

5.    Plaintiff has performed all conditions precedent necessary to the maintenance of this action under the FCRA, including the timely filing of charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR") prior to the filing of this action; and the timely filing of this action.

## FACTUAL BACKGROUND

6.    On or about March 18, 2002, Plaintiff began his employment with Defendant's predecessor company, Blue Ocean, as a technical support employee and ultimately assuming the position of an inside sales engineer.   Blue Ocean was subsequently acquired by Intuit IT Solutions who thereafter was acquired by Defendant sometime around the year 2006.

7.    Throughout his employment with Defendant and its predecessor companies Plaintiff consistently performed his job duties in a more than satisfactory manner.

8.    Unfortunately, Defendant operates and/or allows itself to be operated in a manner which shows little regard for certain applicable laws and/or groups of employees.

9.    During his employment with Defendant and its predecessor companies, Plaintiff suffered from the serious medical condition of Epilepsy.  Plaintiff's condition was

[2]

well known to this Defendant, as well as said predecessor companies. Among other things, Plaintiff had occasionally suffered seizures while in the workplace, though he would continue performing his work duties and rarely took time off regarding same.

10. In late 2006 and onward, Defendant's sales management began to expert a great deal of pressure upon Plaintiff, as well as other sales engineers, to mislead customers into purchasing various software products that knowingly had problems and/or would not perform in the manner in which Defendant wanted such sales associates to represent to their customers.

11. Plaintiff voiced his objection to such misleading and/or fraudulent sales practices and refused to participate in such conduct.

12. Some of Defendant's managers, including inside sales manager, Scott Wooster ("Wooster"), began to harass Plaintiff in retaliation for his having engaged in protected speech and refusal to go along with Defendant's deceptive and illegal trade practices.

13. Likewise, Wooster, among other managers, made it clear that he had less regard for Plaintiff because of his disability and would treat Plaintiff in a disparate manner accordingly.

14. During calendar year 2007 and up to her departure from the Defendant corporation, Plaintiff's direct manger, Sarah Keener ("Keener"), had made attempts to have Plaintiff promoted to an inside sales engineer leader position. However, certain managers, including Wooster and Chris Ferrante ("Ferrante"), sales director, had interfered with and/or blocked all such attempts to promote and/or train Plaintiff for such

[3]

a position claiming, among other things, that Plaintiff was always sick; a reference to his adverse health condition.

15.    Sometime in or about October of 2007, Plaintiff made a sexual harassment complaint to Defendant's human resources department representative, Mary Koehler ("Koehler"), regarding a female co-worker. Despite the fact that Plaintiff ultimately resolved his complaint with his female co-worker, once Wooster learned that Plaintiff had made a sex harassment complaint he became irate and began treating Plaintiff in an even more hostile and threatening manner, even voicing his threats regarding Plaintiff to others for his having engaged in legally protected speech.

16.    In November of 2007, Plaintiff suffered a major seizure while at home and was hospitalized as a result for approximately five (5) days. Thereafter, Plaintiff was out of work for approximately three (3) weeks, during which he stayed in touch with Keener who was supportive of Plaintiff's recovery and informed all sales managers and Koehler of Plaintiff's condition.

17.    On or about January 16, 2008, Keener resigned from the Defendant corporation and Wooster became Plaintiff's immediate supervisor.

18.    Wooster thereafter increased his hostility and disparate treatment of Plaintiff. As an epileptic, Plaintiff is more susceptible to stress, which ultimately can and did trigger seizures for Plaintiff. Wooster, among others, engaged in a repugnant campaign of attempting to trigger such seizures and ultimately trying to force Plaintiff to quit his employment by subjecting him to a ridiculous level of hostility and unwarranted scrutiny and accusations.

[4]

19. In January of 2008, Plaintiff was denied a promotion to a field sales engineer as a further act of discrimination, retaliation and hostility. Defendant would continue to deny Plaintiff any such promotions or training related to promotional opportunities throughout his employment.

20. Plaintiff repeatedly complained to Koehler about Wooster's discriminatory, hostile and retaliatory conduct towards Plaintiff. Moreover, in requesting that Wooster decrease his hostility towards Plaintiff he was seeking an accommodation to avoid triggering epileptic seizures.

21. Koehler failed to make any good faith response to Plaintiff's complaints of discrimination, harassment and retaliation related to his legally protected speech or accommodation requests and instead facilitated the discrimination, retaliation and hostility. Koehler failed to undertake any good faith investigations and aided such disparate treatment by supporting the discriminating managers in a series of fictitious and illegally motivated disciplinary write ups, meetings and verbal warnings towards Plaintiff, including a wholly unwarranted Letter of Warning on or about April 15, 2008, among others.

22. Defendant's hostile discriminatory pattern continued and on or about August 12, 2008, Plaintiff filed a charge of discrimination with the EEOC and FCHR, alleging, among other things, disability discrimination and retaliation.

23. Defendant's illegal conduct towards Plaintiff only increased thereafter.

24. In addition, sometime around June of 2008, Plaintiff had made Defendant, and Koehler specifically, aware that he was considering brain surgery that might mitigate his epilepsy and would require him to take leave under the FMLA.

[5]

25.   Plaintiff had been warned by Mary Betzen in Defendant's accounting department that he should be careful, as Defendant's CEO, David Weiss ("Weiss") had informed her that Defendant was intent on cutting medical costs and Plaintiff would be viewed as a liability in such a case.

26.   Koehler repeatedly pressed Plaintiff for a date when he might have the surgery.  Plaintiff resisted setting a date, as he was sure that Defendant would view this as a deadline to terminate his employment.

27.   Defendant continued to write up Plaintiff based upon fabricated and factually unsupported reasons and Koehler continued to ignore Plaintiff's complaints of discrimination, harassment and retaliation.  Likewise, during this period and throughout the harassment Plaintiff's seizures increased due to the stress of Defendant's illegal conduct.

28.   On or about September 22, 2008, Plaintiff filed an additional EEOC and FCHR charge of discrimination alleging retaliation by Defendant, but Defendant's illegal and harassing conduct merely continued unabated.  In fact, at this stage Defendant's harassment and disparate treatment of Plaintiff was so overt that a number of co-workers openly discussed same with Plaintiff and among each other.

29.   On or about November 10, 2008, Plaintiff informed Koehler that he would have the surgery scheduled for January 12, 2009, and would take leave under the FMLA at that time.

30.   On or about November 28, 2008, Defendant terminated Plaintiff's employment, citing that he was a disgruntled employee.

[6]

31.    Defendant's purported reason for terminating Plaintiff's employment was a pretext to engage in illegal discrimination and retaliation of Plaintiff.

32.    Plaintiff has been damaged as a direct and proximate result of Defendant's illegal conduct.

33.    As a result of the foregoing, Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel a reasonable attorney's fee.

## COUNT I – DISABILITY DISCRIMINATION
## IN VIOLATION OF THE FCRA

34.    Plaintiff realleges Paragraphs 1 through 33, as if fully set forth herein.

35.    At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the FCRA in that Plaintiff was capable of performing all essential functions of the position he had held and/or the positions that were available, with or without a reasonable accommodation.

36.    Likewise, at all times relevant to this action, Plaintiff (a) suffered from one or more actual disabilities and/or physical impairments which substantially limited one or more major life activities, (b) had a record of being disabled, and/or (c) was perceived by Defendant as being actually disabled and/or substantially limited in one or more major life activities.

37.    Plaintiff suffered from physical impairments as defined by 29 C.F.R. § 1630.2(h) at all times relevant to this action. Plaintiff's physical impairments affected one or more major life activities.

[7]

38.    Defendant was prohibited under the FCRA from discriminating against Plaintiff because of his disability with regard to his termination, job opportunities and other terms, conditions, and privileges of employment.

39.    Defendant violated the FCRA by, among other things, harassing Plaintiff in a hostile manner, failing to provide him reasonable accommodation(s) as requested, treating him in a disparate manner, terminating his employment and by otherwise discriminating against him.

40.    Plaintiff has been damaged as a direct and proximate result of Defendant's illegal conduct.

**WHEREFORE**, Plaintiff requests this Honorable Court to:

A.    Grant a permanent injunction enjoining Defendant from engaging in any employment practice violative of the FCRA;

B.    Declare Defendant's conduct to be in violation of the FCRA and order said Defendant to institute policies, practices and programs which provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

C.    Grant a judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, and prejudgment interest thereon;

D.    Grant Plaintiff his costs (including expert fees) and an award of reasonable attorney's fees; and

[8]

E.   Grant Plaintiff trial by jury and such further relief as the Court deems just and equitable.

## COUNT II
## DISPARATE TREATMENT BASED UPON DISABILITY
## IN VIOLATION OF THE FCRA
### (Retaliation)

41.   Plaintiff realleges Paragraphs 1 through 33 as if fully set forth herein.

42.   Plaintiff was in a protected group (disabled) at all times material to this action.

43.   Defendant subjected Plaintiff to a consistent pattern of disability discrimination.

44.   Plaintiff engaged in protected activity by opposing the disability discrimination Plaintiff was subjected to by Defendant.

45.   Defendant retaliated against Plaintiff for his having voiced opposition to Defendant's discriminatory conduct.

46.   Defendant violated the FCRA by retaliating against Plaintiff for said opposition.

47.   Plaintiff has been damaged by the conduct of Defendant.

WHEREFORE, Plaintiff, respectfully requests that this Honorable Court:

A.   Enjoin Defendant from engaging in any employment practice violative of the FCRA;

B.   Grant trial by Jury and a judgment requiring Defendants to pay to Plaintiff back pay found to be due and owing at the time of trial, and prejudgment interest thereon;

[9]

C.    Award Plaintiff compensatory and punitive damages;

D.    Award Plaintiff front-pay;

E.    Grant Plaintiff his costs and an award of reasonable attorney's fees under the FCRA; and

F.    Grant Plaintiff any other relief that this Court deems just and equitable.

## COUNT III – VIOLATION OF THE FLORIDA WHISTLEBLOWER ACT, SECTION 448.102 FLORIDA STATUTES

48.    Plaintiff realleges paragraphs 1 through 33, as if fully set forth herein.

49.    Defendant is an employer as defined in section 448.101(3), of the Florida Statutes.

50.    The Florida Whistleblower Act, subsection 448.102(3), renders an employer liable to an employee for retaliatory personnel action based upon an employee's objection to, or refusal to participate in any activity, policy, or practice of the employer which is in violation of a law, rule or regulation.

51.    Plaintiff had objected to and refused to participate in Defendant's illegal conduct, policies and/or practices.

52.    Defendant harassed Plaintiff and ultimately terminated his employment as a result of his objection and refusal to participate in the aforementioned illegal conduct, policies and/or practices.

[10]

53.   Defendant's harassment and termination of Plaintiff's employment constitutes an unlawful retaliatory personnel action under section 448.102(3), Florida Statutes.

54.   Plaintiff has suffered damages as a direct and proximate result of Defendant's harassment and wrongful termination of his employment.

**WHEREFORE,** Plaintiff requests this Honorable Court to:

A.   Order Defendant to pay an award of damages to fully compensate Plaintiff for lost wages and other compensation to which he is entitled;

B.   Order Defendant to pay prejudgment interest on all sums due Plaintiff;

C.   Order Defendant to pay compensatory damages allowable at law;

D.   Order Defendant to pay an award of attorney's fees and costs (including expert fees) under Section 448.104, Florida Statutes; and

E.   Grant such further relief as the Court deems just, necessary, and proper.

### COUNT IV - VIOLATION OF FMLA

55.   Plaintiff realleges Paragraphs 1 through 33 as if fully set forth herein.

56.   Plaintiff requested FMLA-qualifying medical leave for one or more serious health conditions.

[11]

57.    Defendant willfully violated Plaintiff's FMLA rights by, among other things, retaliating against him for exercising his rights pursuant to the FMLA by harassing Plaintiff and terminating his employment.

58.    Plaintiff has been damaged as a direct and proximate result of Defendant's illegal conduct.

**WHEREFORE,** Plaintiff requests this Honorable Court to:

A.    Grant a permanent injunction enjoining Defendant and its agents from engaging in any employment practice violative of FMLA;

B.    Declare Defendant's conduct to be in violation of the FMLA and order Defendant to institute policies, practices and programs which provide equal employment opportunities for individuals and which eradicate the effects of its past and present unlawful practices;

C.    Grant a judgment requiring Defendant to pay to Plaintiff any back wages and back benefits found to be due and owing to him at the time of trial, liquidated damages to be proved at trial, front pay to be proved at trial, non-economic compensatory damages and prejudgment interest thereon;

D.    Grant Plaintiff his costs (including expert fees) and an award of reasonable attorney's fees; and

E.    Grant Plaintiff trial by jury and such further relief as the Court deems just and equitable.

[12]

## COUNT V
## DISPARATE TREATMENT BASED UPON SEXUAL HARASSMENT
## IN VIOLATION OF THE FCRA
### (Retaliation)

59.    Plaintiff realleges Paragraphs 1 through 33 as if fully set forth herein.

60.    Plaintiff complained about sexual harassment and/or sexually hostile conduct that he had been subjected to and, as such, was in a protected group at all times material to this action.

61.    Plaintiff engaged in protected activity by opposing the sexual harassment which Plaintiff was subjected to by Defendant.

62.    Defendant retaliated against Plaintiff for his having voiced opposition to Defendant's discriminatory conduct.

63.    Defendant violated the FCRA by retaliating against Plaintiff for said opposition.

64.    Plaintiff has been damaged by the conduct of Defendant.

**WHEREFORE**, Plaintiff, respectfully requests that this Honorable Court:

A.    Enjoin Defendant from engaging in any employment practice violative of the FCRA;

B.    Grant trial by jury and a judgment requiring Defendants to pay to Plaintiff back pay found to be due and owing at the time of trial, and prejudgment interest thereon;

C.    Award Plaintiff compensatory and punitive damages;

D.    Award Plaintiff front-pay;

[13]

E.    Grant Plaintiff his costs and an award of reasonable attorney's fees under the FCRA; and

F.    Grant Plaintiff any other relief that this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all counts so triable.

Respectfully submitted,

FELDMAN, FOX & MORGADO, P.A.

Bradley A. Tobin, Esq.
Fla. Bar No. 0101818
2701 N. Rocky Point Drive, Suite 1000
Tampa, Florida 33607
Phone:  (813) 639-9366
Fax:     (813) 639-9376
*Attorney(s) for Plaintiff,*
*Anthony Sayegh.*

[14]